**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ELI LILLY AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM "IAN" BROWN, d/b/a LIVEWELL PEPTIDES,<br><br>Defendant. | ) | Case No.:<br>JURY TRIAL DEMANDED |

**COMPLAINT**

1. Defendant William "Ian" Brown, d/b/a LiveWell Peptides ("LiveWell") claims to be a Dallas-based online seller of purportedly "research use only" products. In reality, LiveWell is selling illegal drugs to consumers and profiting from it. LiveWell markets and sells weight-management products it claims contain retatrutide, an investigational molecule developed by Plaintiff Eli Lilly and Company ("Lilly") for use as a prescription medicine. Neither the U.S. Food and Drug Administration ("FDA") nor any other regulatory agency in the world has approved a medicine containing retatrutide for any use. And despite the pretext LiveWell uses, the substance it sells is not a chemical intended for research use but instead a drug it intends and sells for human use—making LiveWell's product an illegal drug. Retatrutide cannot legally be sold for human use to anyone, anywhere, for any reason. Lilly brings this action to stop LiveWell's conduct—conduct that harms both consumers and Lilly.

2. The American prescription drug market is built on a fundamental premise: before any drug can be sold to patients, FDA must find it to be safe and effective through rigorous clinical testing and review of scientific evidence. Congress and the states developed this system of pre-market review over time after Americans were repeatedly and regularly harmed by unregulated,

dangerous products sold as medicine. In fact, the Food, Drug & Cosmetic Act's ("FDCA") requirement of rigorous clinical data supporting both safety and effectiveness *before* a drug is marketed to Americans traces directly to severe cases of patient death and harm from unapproved drugs sold by unscrupulous sellers.[1] The principle of evidence-based review for safety and effectiveness is essential to protecting Americans from unscrupulous sellers selling unsafe and untested drugs. Proving that safety and effectiveness for a new molecule like retatrutide requires lengthy clinical trials under strict ethics rules, billions of dollars in investments in research and manufacturing capacity, and—even then—fails to produce an approved medicine more than 90% of the time.

3. Even after the laws passed, unapproved drugs illegally sold as medicine have caused hundreds of deaths.[2] LiveWell is engaged in the same type of conduct. In selling its illegal drugs under a false pretext, LiveWell mocks the safety guarantees imposed by Congress and the states, flouts drug-regulatory standards, and exploits the clinical trial data from investigational medicines that Lilly and others have developed.

4. Lilly's Phase 3 clinical trials have produced powerful data, including a recent trial that showed retatrutide helped adults living with obesity lose an average of approximately 70 pounds over 80 weeks at the highest dose.[3] But retatrutide is still an investigational molecule, and Lilly has not finished its clinical trials or submitted a final data package to FDA to establish the

---

[1] *E.g.*, FDA, Promoting Safe & Effective Drugs for 100 Years, *FDA Consumer* (Jan.-Feb. 2006) (detailing the sulfanilamide and thalidomide scandals that led to the 1938 Act and 1962 Amendments, respectively), *available at* https://www.fda.gov/media/110482/download?attachment.

[2] *E.g.*, FDA, Unapproved Drugs and Patient Harm (June 2, 2021), https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

[3] Lilly | Investors, *Lilly's triple agonist, retatrutide, delivered powerful weight loss in pivotal Phase 3 obesity trial* (May 21, 2026), https://investor.lilly.com/news-releases/news-release-details/lillys-triple-agonist-retatrutide-delivered-powerful-weight-loss.

safety and effectiveness of any retatrutide medicine—nor has any other manufacturer—and FDA has not approved it. So, right now, there is no approved product containing retatrutide that has been proven safe and effective or authorized for human use. Accordingly, retatrutide is legally available only under strict protocols to select patients as an investigational new drug. No other lawful access to any retatrutide product for human use exists. The law is therefore clear and categorical: no drug containing retatrutide may be sold to consumers. Period.

5. The consequences of LiveWell's conduct are real and dangerous for consumers. Research use only products are, definitionally, not for human use. Consumers who purchase these illegal products are injecting themselves with substances of unknown composition, purity, potency, and sterility. These formulations and manufacturing quality processes have never been subject to FDA testing or review, clinical studies, or efficacy research. Illegal drugs made outside of a regulated, inspected supply chain are more likely to contain bacteria and other harmful contaminants and impurities. Consumers have no way to know whether these products are safe or effective.

6. LiveWell's illegal scheme also directly harms Lilly. In addition to its research developing retatrutide, Lilly has developed several FDA-approved obesity management medicines. By relying on Lilly's studies and presenting LiveWell's purported retatrutide products as superior to approved medicines treating obesity, LiveWell free rides on Lilly's innovation and research and development while bearing none of the costs, regulatory burdens, or responsibility for patient safety during that process. By selling illegal retatrutide products to people seeking medication for their obesity-related conditions, LiveWell's illegal sales are costing Lilly sales of its FDA-approved obesity management medicines.

7. The harm to consumers and Lilly does not end there. LiveWell is also poisoning the well for the future of retatrutide medicines. Because no retatrutide medicine is yet commercially available from any lawful source, consumers' first experiences with products purporting to be retatrutide are occurring exclusively through black-market sellers like LiveWell. When those consumers suffer adverse events—as many already have—they associate them with retatrutide as a molecule, not the particular illegal product sold by the illegal seller. By the time Lilly brings its FDA-approved retatrutide medicine to market, LiveWell and sellers like it will have conditioned both potential patients who took its illegal drugs as well as the public at large to associate retatrutide with danger and harm, permanently damaging the approved medicine's potential to help patients who need it.

8. LiveWell's conduct is not an isolated incident. In just the last several months, FDA has issued at least 21 warning letters to sellers of illegal retatrutide products. LiveWell is part of a dangerous and growing black market that threatens public health—and violates the law of numerous states.

9. Lilly asks this Court to put a stop to it. Lilly seeks a permanent injunction barring LiveWell from marketing, selling, or distributing any product containing or purporting to contain retatrutide; damages and disgorgement of LiveWell's profits; and an award of attorneys' fees and costs. American consumers deserve better than the risky and unlawful products that LiveWell is selling them.

## THE PARTIES

10. Plaintiff Eli Lilly and Company is a corporation organized and existing under the laws of Indiana with its principal place of business in Indiana.

11. Upon information and belief, Defendant LiveWell Peptides is a Texas-based sole proprietorship owned and operated by William "Ian" Brown with a principal place of business at

1910 Pacific Avenue, No. 9350, Dallas, Texas 75201.[4] LiveWell was founded in 2023 and operates an e-commerce website at livewellpeptides.com through which it markets, distributes, and sells products it claims contain retatrutide and other peptides directly to consumers nationwide. LiveWell describes itself as "a trusted USA-based manufacturer specializing in premium research peptides, white-label solutions, and raw materials."[5] LiveWell claims to manufacture its products at a "cGMP-certified facility" located at 1910 Pacific Avenue in Dallas, Texas[6] and, upon information and belief, employs between 11-50 employees.[7] LiveWell sells, markets, and distributes products it claims contain retatrutide.[8]

12. LiveWell ships its purported retatrutide products from within the United States to all U.S. addresses. LiveWell's website states that "[d]omestic orders are dispatched from our Dallas, Texas facility" and that "temperature-sensitive products ship same-day with thermo-packaging and ice packs to protect stability in transit."[9]

---

[4] *See* LiveWell Peptides, About Us, https://www.livewellpeptides.com/about-us/ (last visited Sept. 30, 2026); LinkedIn, Ian Brown, https://www.linkedin.com/in/ian-brown-5128843a/ (last visited Sept. 30, 2026) (noting ownership of LiveWell Peptides from June 2024 to present); BBB, LiveWell Peptides, https://www.bbb.org/us/tx/dallas/profile/online-retailer/livewell-peptides-0875-91354445 (last visited Sept. 30, 2026).

[5] LinkedIn, LiveWell Peptides | About, https://www.linkedin.com/company/livewell-peptides/about/ (last visited Sept. 30, 2026).

[6] LiveWell Peptides, About Us, https://www.livewellpeptides.com/about-us/ (last visited Sept. 30, 2026). Notably, the address provided for LiveWell's "cGMP-certified facility" is for a high-rise office building, not a manufacturing facility. *See* Boxer Property, Office Space for Rent – 1910 Pacific Avenue, https://www.boxerproperty.com/office-space/dallas/1910-pacific-ave/ (last visited Sept. 30, 2026); Wikipedia, Pacific Place (Dallas), https://en.wikipedia.org/wiki/Pacific_Place_(Dallas) (describing location as a "Class-A office skyscraper" with "20 floors of office space") (last visited Sept. 30, 2026).

[7] LinkedIn, LiveWell Peptides | About, https://www.linkedin.com/company/livewell-peptides/about/ (last visited Sept. 30, 2026).

[8] LiveWell Peptides, Retatrutide (Triple GLP-1/GIP/Glucagon Agonist), https://www.livewellpeptides.com/product/glp-1-r/ (last visited Sept. 30, 2026).

[9] LiveWell Peptides, FAQs, https://www.livewellpeptides.com/faqs/ (last visited Sept. 30, 2026).

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. LiveWell is subject to personal jurisdiction in Texas because its principal place of business is in Texas. LiveWell is also subject to personal jurisdiction in Texas because it has significant contacts with the forum and has purposefully availed itself of the privilege of conducting business in Texas, including by owning and operating an e-commerce website at livewellpeptides.com that markets and sells purported retatrutide products to consumers nationwide from its Texas-based operations in Dallas, Texas, and by promoting and selling the retatrutide products at issue in this Complaint into Texas and to Texas customers.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Lilly's claims occurred in this District. LiveWell operates and conducts business in this District, including by engaging in its unlawful promotion and sale of retatrutide products here and by shipping its products here.

## GENERAL ALLEGATIONS

### I. FDA'S RIGOROUS AND THOROUGH REVIEW OF NEW DRUGS AND MEDICINES PROTECTS AMERICAN PATIENTS

16. In FDA's words, "American consumers benefit from having access to the safest and most advanced pharmaceutical system in the world."[10] The American system for reviewing new medicines, with its rigorous and thorough pre-market evaluation of scientific data, is crucial for public health.

---

10 FDA, *Development & Approval Process | Drugs* (Aug. 8, 2022), https://www.fda.gov/drugs/development-approval-process-drugs.

17. Before a new drug can be brought to market, the drug must be clinically tested through a rigorous series of studies designed to determine whether the medication is safe and effective for use under specific conditions and for specific indicated purposes. As an initial step, a drug sponsor must obtain FDA authorization to administer an investigational drug to human subjects through an Investigational New Drug ("IND") application.[11] The IND process requires sponsors to submit detailed preclinical data, manufacturing information, and clinical protocols for FDA review. The IND does not authorize commercial sale of the drug. ***Any*** distribution to or use of the investigational drug on humans outside of an effective IND protocol is unlawful.

18. After proceeding through the years-long clinical trial process, sponsors must provide FDA with a New Drug Application ("NDA") or Biologics License Application ("BLA") containing sufficient evidence proving the product is safe and effective for its intended indications, among other things. That evidence is subjected to a structured, multi-disciplinary review involving physicians, statisticians, chemists, pharmacologists, and other scientists. Approval is granted only if this review establishes that a drug's health benefits outweigh its known risks in treating particular conditions.

19. Additionally, obtaining and maintaining FDA approval requires strict compliance with current Good Manufacturing Practices ("cGMP") regulations across the entire supply chain, from raw materials to finished medical products. Manufacturers must audit suppliers, control material specifications, and validate processes to ensure the safety, identity, and strength of the product.[12]

---

[11] *See* 21 U.S.C. § 355(i); 21 C.F.R. pt. 312.

[12] FDA, *Facts About the Current Good Manufacturing Practice (CGMP)* (Nov. 21, 2025), https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practice-cgmp.

20. FDA approval is notoriously hard to achieve in the United States. More than 90% of candidates fail. It is also an enormously costly and time-intensive process. On average, it takes ten to fifteen years and costs $2.6 billion to develop one new FDA-approved medicine.

21. If a prescription drug or biologic is approved, FDA's vigorous oversight continues after its approval. Among other things, sponsors must report all promotional materials to FDA; track and trace each finished product and report any deviations; and promptly report adverse events.

22. This continuous oversight allows America to represent what FDA has called "the gold standard" for pharmaceutical regulation.

23. In addition to federal regulations, states play an important role in regulating the sale of drugs and biologics within their borders. Most states prohibit the sale of prescription drugs that lack FDA or state regulatory approval and further prohibit the sale of even approved drugs that are misbranded (e.g., false, misleading, or inaccurate information on drug labels) or adulterated (e.g., manufactured under unsanitary conditions).

## II. LILLY DEVELOPS FDA-APPROVED OBESITY MANAGEMENT MEDICINES AND INVESTIGATIONAL TREATMENTS

24. Lilly is an international medicine company and pharmaceutical manufacturer. Throughout its 150-year existence, Lilly has pioneered countless life-changing discoveries. Today, Lilly's medicines help more than 70 million patients across the globe.

25. Lilly developed tirzepatide over nearly a decade of research and development, conducting 37 clinical trials involving tens of thousands of patients. Tirzepatide is a first-in-class dual-action molecule that simultaneously targets receptors for glucagon-like peptide-1 ("GLP-1") and glucose-dependent insulinotropic polypeptide ("GIP").

26. Tirzepatide is the active pharmaceutical ingredient in MOUNJARO® and ZEPBOUND®, two of Lilly's important FDA-approved medicines. MOUNJARO® was approved by FDA to treat type 2 diabetes. ZEPBOUND® was approved by FDA for chronic weight management in adults with obesity or overweight with at least one weight-related medical condition, as well as moderate-to-severe obstructive sleep apnea ("OSA") in certain adults with obesity.

27. Lilly also brought to market the novel molecule orforglipron, which targets GLP-1 receptors. Orforglipron is the active pharmaceutical ingredient in FOUNDAYO™, which was approved by FDA on April 1, 2026, to treat obesity or overweight with at least one weight-related comorbid condition. It is a once-daily oral pill that represents a significant advance in obesity treatment as one of the first oral GLP-1 receptor agonists approved for chronic weight management.

28. Lilly is the only lawful source of commercially manufactured tirzepatide products in the United States. No other company has obtained FDA approval to manufacture or sell tirzepatide. Likewise, Lilly is the only company that has sought and received FDA approval for orforglipron. No other entity has conducted the clinical trials or obtained the regulatory approvals necessary to lawfully market orforglipron in the United States.

29. Over the past decade, Lilly has developed another investigational molecule, retatrutide, a triple hormone receptor agonist that simultaneously activates receptors for GIP, GLP-1, and glucagon—hence the designation "triple agonist." Lilly is studying retatrutide in several Phase 3 clinical trials to evaluate its potential efficacy and safety in treating obesity and overweight with at least one weight-related medical problem, type 2 diabetes, knee osteoarthritis pain, moderate-to-severe OSA, chronic low back pain, cardiovascular and renal outcomes, and

metabolic dysfunction-associated steatotic liver disease. In Lilly's clinical trials, retatrutide is administered as a once-weekly subcutaneous injection.

30. Lilly identified retatrutide as a candidate through extensive laboratory and analytical work, advanced it through preclinical testing, and filed an Investigational New Drug application with FDA to authorize human clinical trials. Lilly began the clinical trial process for retatrutide in 2019.

31. Lilly holds an effective IND application for retatrutide, meaning that Lilly is authorized under federal law to conduct human clinical trials to evaluate the molecule's safety and efficacy.[13] An IND authorizes only carefully controlled clinical investigations and use under strict FDA oversight; it does not permit general commercial distribution or sale of the investigational drug to consumers.

32. While Lilly's controlled tests are encouraging, no retatrutide medicine has yet been approved by FDA or any other regulatory agency in the world—and especially not LiveWell's products. No medicine containing retatrutide has approved labeling, retatrutide as an API is not a component of any FDA-approved product, and no manufacturing process for retatrutide API or finished products has been validated under cGMP for public commercial distribution. Any sale of retatrutide for human use is illegal.

## III. BAD ACTORS ILLEGALLY SELL RETATRUTIDE TO CONSUMERS PRIOR TO ITS FDA APPROVAL

### A. The Black Market for Retatrutide

33. The powerful clinical trial results for retatrutide have generated significant consumer interest in it. Bad actors have taken advantage of that interest to make a profit, and a

[13] 21 U.S.C. § 355(i); 21 C.F.R. pt. 312.

black market has emerged that is threatening consumer safety by illegally advertising, selling, and distributing products purportedly containing retatrutide directly to the public.

34. Capitalizing on consumer demand for obesity management medications, sellers—including online retailers, "research use only" peptide suppliers like LiveWell, and med spas—bypass the lawful approval process. They offer consumers what they call "retatrutide," but the substance they sell is an illegal drug produced entirely outside of FDA's oversight—often sourced from unknown foreign suppliers and illegally imported.

35. These illegal sales of purported retatrutide products represent a dangerous end-run around the rigorous FDA approval process. By selling unverified substances directly to consumers for human use, LiveWell and other sellers like it expose the public to unknown adverse events while undermining the regulatory framework designed to protect patients and promote the lawful development of safe and effective new drugs.

**B. FDA's and Lilly's Efforts to Warn Consumers**

36. FDA has recognized the danger of illicit retatrutide and taken direct action against retatrutide sellers to curtail these illegal sales. FDA has explicitly stated in warning letters[14] that "introducing or delivering these products for introduction into interstate commerce violates" federal law.[15] FDA has also cautioned consumers "not to purchase" retatrutide products labeled "for research purposes" because "they are of unknown quality and may be harmful to their

---

[14] FDA typically uses warning letters to notify parties of what FDA identifies as significant violation(s) of federal requirements. *See* FDA, About Warning and Close-Out Letters (Mar. 20, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/about-warning-and-close-out-letters.

[15] *E.g.*, Warning Letter from FDA to Gram Peptides, MARCS-CMS-721806 (Mar. 31, 2026), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gram-peptides-721806-03312026.

health."[16] Most recently, FDA reiterated that retatrutide is an "unapproved drug," is "not [a] component[] of FDA-approved drugs," and has "not been found safe and effective for any condition."[17]

37. In total, FDA has sent at least 21 warning letters related to retatrutide, in addition to more than 100 warning letters since September 2025 to entities marketing compounded GLP-1 receptor agonists with "false or misleading claims."[18] As FDA stated in a recent press release, these warning letters mark "a new era" of enforcement against the illegal sale of unapproved drugs.[19]

38. Lilly has also publicly warned consumers about the dangers of illegal products claiming to be or to contain retatrutide, making clear that selling retatrutide to consumers for human use is illegal, and that consumers have no way to verify the safety of what they are receiving on the black market.[20] To combat black-market drugs, Lilly continues to work with law enforcement and regulatory authorities.

---

[16] FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

[17] *Id.*

[18] For example, on March 31, 2026, FDA issued warning letters to: (a) Gram Peptides for selling "Retatrutide" (also marketed as "GLP-1-R peptide") that it promoted for "appetite suppression, insulin sensitivity, thermogenesis, and fat-oxidation"; (b) Prime Sciences for selling "GLP1-R" (identified as retatrutide) that it promoted with claims that "[r]etatrutide has shown higher weight loss results in clinical trials, with an average of up to 28% body weight reduction"; and (c) Lovega LLC d/b/a Pink Pony Peptides for selling "GLP-3 RT" (identified as retatrutide) that it promoted as offering "three times the fat-fighting horsepower" with "jaw-dropping results."

[19] *See* FDA, FDA Warns 30 Telehealth Companies Against Illegal Marketing of Compounded GLP-1s (Mar. 3, 2026), https://www.fda.gov/news-events/press-announcements/fda-warns-30-telehealth-companies-against-illegal-marketing-compounded-glp-1s; *see also, e.g.*, Warning Letter from FDA to PekCura Labs, MARCS-CMS-721709 (Mar. 31, 2026), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/pekcura-labs-721709-03312026.

[20] *See, e.g.*, Lilly, *What to know about retatrutide: An investigational triple hormone receptor agonist*, https://www.lilly.com/news/stories/what-to-know-about-retatrutide (last updated Sept. 29, 2026).

### C. Consumers Are Reporting Adverse Events After Taking Black-Market Retatrutide

39. Online communities, including Reddit forums like r/Retatrutide, r/BodyHackGuide, and r/Biohacking, demonstrate the thriving black market for illegal retatrutide products and its dangers. Consumers openly discuss purchasing, self-administering, and dosing of retatrutide products obtained from unregulated sources, including products sourced from Chinese manufacturers and suppliers.[21]

40. These online communities report adverse events, including emergency room visits with increased heart rates; elevated fasting glucose levels; severe skin reactions described as a sensation of "tiny mites or something crawling and biting"; brain fog; and concerns about bacterial contamination and endotoxins from products not manufactured in regulated or sterile laboratories.[22] Upon information and belief, consumers experienced these adverse events without receiving any warnings.

---

[21] *See, e.g.*, u/Confident-Rhubarb957, REDDIT (r/Biohacking), "Tirz - Reta switch. And Reta dosing advice," https://www.reddit.com/r/Biohacking/comments/1rsx0oa/tirz_reta_switch_and_reta_dosing_advice/ (last visited Sept. 30, 2026); u/improximus, REDDIT (r/BodyHackGuide), "Why Reta? Why not Tirz?" https://www.reddit.com/r/BodyHackGuide/comments/1szktx8/why_reta_why_not_tirz/ (last visited Sept. 30, 2026).

[22] u/D3st9ny, REDDIT (r/Retatrutide), "Bacteria and endotoxins," https://www.reddit.com/r/Retatrutide/comments/1suodk7/bacteria_and_endotoxins/ (last visited Oct. 1, 2026); u/cac520, REDDIT (r/Retatrutide), "Realized it's time to stop Reta," https://www.reddit.com/r/Retatrutide/comments/1pspn4r/realized_its_time_to_stop_reta/ (last visited Oct. 1, 2026); u/BTheFurnace, REDDIT (r/Retatrutide), "Those who have taken reta for over 6 months: Has your resting heart rate returned to normal?" https://www.reddit.com/r/Retatrutide/comments/1rcxz1m/those_who_have_taken_reta_for_over_6_months_has/?rdt=49360 (last visited Oct. 1, 2026) (comment posted by Last-boomer1964).

r/Retatrutide • 5mo ago
cac520

**Realized it's time to stop Reta** 😞

I'm down almost 40lbs and have a lot more to lose. I think Reta can get me to my goal but these side effects are wearing me down. First, my fasting glucose levels are high. I'm eating very little sugar and wasn't having this issue previously. Nothing I do brings it down. Second, the skin reaction-it feels like tiny mites or something crawling and biting/stinging me. Took a minute to figure out what the issue was. This kicked in when I hit 4mg. My skin is raw from the scratching. Benadryl helps, but not 100%. Hubs is on Tirz so he'll transition to Reta and I'll go to Trizzy. Wish us luck.

Besides the usual nausea and constipation, are you guys experiencing side effects?

41. One consumer reported being hospitalized after using a purported retatrutide product obtained from unregulated sources, while another user described a friend who "got hospitalized because of the bacteria" in products that "aren't made in regulated or sterile labs."[23] Indeed, there are ***no*** regulated manufacturers authorized to prepare retatrutide for human commercial use. A recent analysis shows that individuals who used black-market retatrutide lost an average of 4.7% to 7.2% of their body weight over three to twelve months—while participants in Lilly's clinical trial lost more than twice the amount of weight over the same time periods—confirming the inferior quality of illegal retatrutide products that are being unlawfully sold to and used by consumers.[24] Further, an independent testing lab recently reported widespread purity

---

[23] u/D3st9ny, REDDIT (r/Retatrutide), "Bacteria and endotoxins," https://www.reddit.com/r/Retatrutide/comments/1suodk7/bacteria_and_endotoxins/ (last visited Sept. 30, 2026); u/cac520, REDDIT (r/Retatrutide), "Realized it's time to stop Reta," https://www.reddit.com/r/Retatrutide/comments/1pspn4r/realized_its_time_to_stop_reta/ (last visited Sept. 30, 2026).

[24] Elizabeth Cairns, *Using Gray-Market Versions of Lilly's Triple-G Leads to Relatively Poor Weight Loss, Study Finds*, Endpoints News (Aug. 20, 2026), https://endpoints.news/using-gray-market-versions-of-lillys-triple-g-leads-to-relatively-poor-weight-loss-study-finds/.

concerns with black-market retatrutide, including contamination with heavy metals like lead, cadmium, and mercury.[25]

## IV. LIVEWELL SELLS ILLEGAL RETATRUTIDE PRODUCTS IN VIOLATION OF STATE LAW

42. LiveWell markets, distributes, and sells products it claims contain retatrutide. LiveWell operates an e-commerce website at livewellpeptides.com through which it sells retatrutide products directly to consumers nationwide.

43. In a transparent effort to mask the illegal nature of its business, LiveWell's website prominently indicates that it is selling "research use only" products. But "research use only" is a designation for products that are to be used in clinical *laboratory* settings for research, not on human patients in any manner. And LiveWell's website and retatrutide product webpage make clear that it is selling retatrutide for human use, making it an illegal, unapproved drug.

44. LiveWell's retatrutide product page describes retatrutide as a "triple receptor agonist" that targets "GLP-1, GIP, and glucagon receptors" and advertises the product as being "studied in multi-receptor signaling and metabolic pathway interaction research."[26] LiveWell's product page lists various studied applications, including "[r]eceptor-binding and metabolic-pathway studies," and also references "[r]elated research" on "Semaglutide (GLP-1)" and "Tirzepatide (Dual GIP/GLP-1)"—the active pharmaceutical ingredient in Lilly's FDA-approved medications, ZEPBOUND® and MOUNJARO®—highlighting the potential benefits from human (and hence consumers') use of the product.[27]

---

[25] Rachel Carbonell, Caitlyn Gribbin & Andi Yu, *New Testing of Black-Market Peptides Reveals Dangerous Dosing Levels*, RNZ (Aug. 28, 2026), https://www.rnz.co.nz/news/world/1158694/new-testing-of-black-market-peptides-reveals-dangerous-dosing-levels.

[26] LiveWell Peptides, Retatrutide (Triple GLP-1/GIP/Glucagon Agonist), https://www.livewellpeptides.com/product/glp-1-r/ (last visited Sept. 30, 2026).

[27] *Id.*

45. LiveWell also tries to increase the perceived legitimacy of its retatrutide product by citing Lilly's TRIUMPH trials and also "[r]esearch literature" of which "Retratrutide [sic] has been the subject."[28]

46. Despite its purported "research use only" disclaimers, LiveWell's retatrutide products are targeted at consumers. In addition to allowing consumers to purchase its retatrutide products, LiveWell's purported retatrutide product comes in a lyophilized vial and its website instructs purchasers to "[r]econstitute with bacteriostatic water"—and links to another product on its website, bacteriostatic water, so both can be purchased at the same time "for peptide reconstitution."[29] Such reconstitution serves no legitimate laboratory research purpose—and indeed a research laboratory would have its own protocols and reagents—and instead the instructions are plainly directed at enabling individual consumers to prepare the product for injection.

47. LiveWell's apparent effort to attract consumers is working. Numerous consumers have endorsed LiveWell's products for personal use on the company's social media websites, claiming LiveWell offers the "[b]est peptides."[30] Consumers also make their own posts separate from LiveWell's page and attribute weight loss and muscle gain to using LiveWell's products.[31] One consumer also characterizes his consumption of LiveWell's peptides as a "journey and experiment"—an experiment with the consumer's own body and *not* in a laboratory—"to reduce inflammation and repair sports injuries primarily in spine."[32] That same consumer uses various

---

[28] *Id.*

[29] *Id.*; LiveWell Peptides, Bacteriostatic Water, https://www.livewellpeptides.com/product/bacteriostatic-water/ (last visited Sept. 30, 2026).

[30] FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/p/19NdPazTzX/ (Nov. 10, 2025).

[31] FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/p/1DoBA7cysP/ (Sept. 14, 2025).

[32] FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/p/14kJCs1aA2W/ (Sept. 7, 2025).

peptides from LiveWell and provides a day-by-day account of side effects, injection pain, and other anecdotal information.[33]

48. In addition to allowing direct-to-consumer purchases from its website, LiveWell has partnered with social media influencers to provide affiliate links and discount codes for purchasing peptides, including retatrutide.[34] Social media personalities—apparently supported by LiveWell—are also wearing LiveWell merchandise, using LiveWell branding, tagging LiveWell in weight loss posts, and attributing their weight loss and fitness journey success to LiveWell.[35]

49. LiveWell endorses these influencers' consumption of its "research use only" peptides, claiming to be "proud of [their] progress and dedication."[36] LiveWell also advertises the influencers' consumption of its peptides, stating it "appreciate[s] your support" and promises more information on these "valuable insights" on other platforms like Instagram, YouTube, and an upcoming podcast.[37] While claiming its products are for research purposes only, it nonetheless tells consumers that they should "[t]ake control of your path"[38] and "[t]ake back control of your health"[39] with LiveWell's peptides.

---

33 *Id.*

34 Video posted by MrRandomEric (@mrrandomeric) TIKTOK, https://www.tiktok.com/@mrrandomeric/video/7553797380546530591 (posted Sept. 9, 2025) (offering 20% off peptides when using the discount code "WALTRIP20").

35 Video posted by MrRandomEric (@mrrandomeric) TIKTOK, https://www.tiktok.com/@mrrandomeric/video/7556647447892659486 (Oct. 2, 2025) ("Less than 3 months into fitness journey, I can't wait to see where it takes me next!"); *see also* FACEBOOK, MrRandomEric, https://www.facebook.com/reel/1724174654949065 (last visited Sept. 30, 2026) ("Great work out[,] love the new gear too. Thanks livewell!").

36 FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/r/1CY5R5dH5W/ (last visited Sept. 30, 2026) ("Optimizing you're [sic] health – Needs to be taken seriously[.] Eric Waltrip is in his 40s & we are proud of his progress and dedication. Keep it up, as you have inspired many others. #livewellpeptides #health #peptides #education….").

37 FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/p/1DoBA7cysP/ (Sept. 14, 2025).

38 FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/p/19Dc8QznCd/ (Dec. 9, 2025).

39 FACEBOOK, LiveWell Peptides, https://www.facebook.com/share/r/1DRCB9oSZV/ (last visited Sept. 30, 2026) (advertising GLP-1 and other "fitness" peptides with a sitewide 35% off discount).

50. LiveWell's owner claims on social media that the company created a "Path to Peptides Community" that serves as "[y]our resource for peptide education" and provides consumers with information on a variety of topics, "such as reconstitution protocols, dosing calculations, safety practices, and emerging research."[40] LiveWell's owner also tells consumers "why people use peptides"—for benefits such as "enhanced fat loss and muscle growth"—and provides an informal "how to" for "getting started with peptides."[41] He explains that peptides are "[i]njected into the fat layer under the skin," and goes on to instruct consumers that peptides "are tools to enhance an already healthy lifestyle" that "work best when combined with[] proper nutrition, regular exercise, [and] adequate sleep."[42]

---

[40] Ian Brown, LINKEDIN, https://www.linkedin.com/in/ian-brown-5128843a/ (identifying ownership of LiveWell Peptides from June 2024 through present day in Dallas, Texas) (last visited Sept. 30, 2026).

[41] Ian Brown, LINKEDIN, https://www.linkedin.com/posts/ian-brown-5128843a_getting-started-with-peptides-peptides-are-activity-7419893298326216704-JtSK?utm_source=share&utm_medium=member_desktop&rcm=ACoAABkO0UgBByVU1XtxE3HvpGz5P4kqyBYl1_Q (last visited Sept. 30, 2026) (explaining that people use peptides for "[e]nhanced fat loss.").

[42] *Id.*



Ian Brown • 3rd+
CEO V.P of Hazardous Truckload Operations LIVE GLOBAL ...
6mo •

GETTING STARTED WITH PEPTIDES
Peptides are short chains of amino acids—the building blocks of proteins—that act as messengers in your body. They tell your cells to perform specific functions like healing, growing muscle, burning fat, or improving brain function.

THINK OF PEPTIDES AS
Precise instructions for your body
Natural biological messengers
Targeted tools with specific effects
Generally safer alternatives to synthetic drugs
WHY PEOPLE USE PEPTIDES
Better recovery from exercise and injuries
Improved cognitive function and mental clarity
Enhanced fat loss and muscle growth
Anti-aging benefits and overall wellness
Stronger immune system and faster healing

WHAT MAKES PEPTIDES SPECIAL
Unlike many medications that affect your whole system, peptides are highly targeted. They typically:
• Have fewer side effects
Work with your body's natural processes
Break down into harmless amino acids
Can address specific health concerns precisely

51. LiveWell's marketing and sales practices—including its consumer-facing product descriptions emphasizing metabolic benefits such as "metabolic-pathway studies" and "receptor-binding" research, its provision of products in ready-to-use lyophilized vial forms with instructions to "[r]econstitute with bacteriostatic water," its consumer-friendly e-commerce features (including a shopping cart, volume-based pricing discounts, free shipping on orders over $200, and an age-verification gate requiring purchasers to confirm they are 21 or older),[43] along with its own (and its owner's) statements on social media, demonstrate that LiveWell markets and sells its purported retatrutide products for human consumption. Taken together, the entirety of LiveWell's website,

---

[43] LiveWell Peptides, Tirzepatide (Dual GIP/GLP-1 Receptor Agonist), https://www.livewellpeptides.com/product/glp-1-t/ (last visited Sept. 30, 2026); LiveWell, Semaglutide (GLP-1 Receptor Agonist), https://www.livewellpeptides.com/product/glp1-s/ (last visited Sept. 30, 2026); LiveWell Peptides, Retatrutide (Triple GLP-1/GIP/Glucagon Agonist), https://www.livewellpeptides.com/product/glp-1-r/ (last visited Sept. 30, 2026).

social media presence, and marketing materials is directed at individual consumers seeking obesity-management and metabolic-health medications—not at research laboratories or scientific institutions.

52. LiveWell's retatrutide products are unapproved new drugs. Under federal law, a product (other than food) is a "drug" if, as relevant here, it is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, is intended to affect the structure or any function of the human body, or is intended for use as a component of such products.[44] The laws of Alaska, Colorado, Connecticut, North Carolina, South Carolina, Tennessee, Texas, and Washington all define a "drug" using the same test.[45] By selling products that purportedly treat obesity (a recognized disease) and promote weight loss (by affecting the structure and function of the body as a receptor agonist), LiveWell and sellers like it are selling "drugs" that have not been approved—and are undeniably illegal.

53. No medicine containing retatrutide has ever received FDA approval. It is an investigational molecule that is not approved for human use.

54. LiveWell does not hold and cannot hold a valid marketing application for retatrutide because no such application has been filed with or approved by FDA.

55. LiveWell's products do not qualify for any compounding exemption under Section 503A of the FDCA, 21 U.S.C. § 353a, because, among other reasons, retatrutide is not a component of any FDA-approved drug and therefore cannot be lawfully compounded. FDA has stated unequivocally: "Retatrutide . . . cannot be used in compounding under federal law," is "not [a]

---

44 21 U.S.C. § 321(g).

45 Alaska Stat. § 17.20.370(7); Colo. Rev. Stat. § 12-280-103(16); Conn. Gen. Stat. § 21a-92(8); N.C. Gen. Stat. § 106-121(6); S.C. Code § 39-23-20; Tenn. Code § 53-1-102(14); Tex. Health & Safety Code § 431.002(14); R.C.W. § 69.04.009.

component[] of FDA-approved drugs," and has "not been found safe and effective for any condition."[46] LiveWell itself acknowledges on its website that it is "[n]ot a Pharmacy" and is "not a licensed pharmacy, healthcare provider, or compounding entity" and is "not registered under Section 503A or 503B of the Federal Food, Drug, and Cosmetic Act."[47]

56. Upon information and belief, LiveWell has sold and continues to sell unapproved retatrutide products to consumers in Alaska, Colorado, Connecticut, North Carolina, South Carolina, Tennessee, Texas, and Washington. LiveWell's sale of unapproved retatrutide products violates the laws of those states, each of which prohibits the sale of unapproved new drugs.

57. LiveWell's products pose a serious risk to consumer health and safety. Unlike FDA-approved drugs, LiveWell's products have not been verified for safety, efficacy, or quality through clinical trials and are not manufactured through a regulated, inspected supply chain. Consumers who purchase these products are exposed to substances of unknown composition, purity, potency, and sterility.

58. LiveWell has profited from its unlawful conduct at the expense of consumers and Lilly.

## V. LIVEWELL'S UNLAWFUL ADVERTISING AND SALES OF RETATRUTIDE HARMS CONSUMERS AND LILLY

59. Consumers who purchase LiveWell's illegal retatrutide products are harmed because they receive illegal and unverified products of unknown safety, purity, potency, and efficacy. Indeed, consumers report experiencing adverse events after self-administering black-market retatrutide products, *see supra* Section III.C.

---

[46] FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

[47] LiveWell Peptides, About Us, https://www.livewellpeptides.com/about-us/ (last visited Sept. 30, 2026).

60. LiveWell's conduct also causes unfair competitive harm to Lilly. Some consumers who meet the criteria for obesity management medications are choosing illegal retatrutide products over Lilly's FDA-approved obesity-management medicines, citing illegal sellers' claims of lower cost and perceived superior efficacy as the primary drivers. For example, one user reported that the cost of "10×20mg of retatrutide was about half the cost of a single 7.5mg Mounjaro pen," making it "hard to justify staying on Mounjaro long term."[48] Another user who lost 169 pounds on tirzepatide asked whether "switching over to reta" would help reach her remaining weight-loss goal.[49] These consumer accounts demonstrate that consumers are being diverted from Lilly's FDA-approved medicines to risky, illegal products.

61. By selling illegal retatrutide products, LiveWell diverts consumers away from Lilly's FDA-approved products, including MOUNJARO®, ZEPBOUND®, and FOUNDAYO™. Both companies market and sell products to the same potential customers seeking treatment for obesity, type 2 diabetes, and/or related metabolic conditions. Because LiveWell's unapproved retatrutide products and Lilly's FDA-approved medicines target the same consumer pool, LiveWell's illegal sales are in direct competition with Lilly and are costing Lilly sales of its FDA-approved obesity-management medicines. LiveWell's advertising of its purported retatrutide products alongside APIs (like tirzepatide and semaglutide) from FDA-approved obesity-management products stands to exacerbate this diversion.

62. LiveWell also undermines the market for Lilly's future retatrutide medicine, if approved, which Lilly is studying through the lawful FDA approval process. LiveWell is selling

---

[48] u/ApplicationNo7327, REDDIT (r/Retatrutide), "Switching from Mounjaro (Tirzepatide) to Reta - my experience," https://www.reddit.com/r/Retatrutide/comments/1stnp7l/switching_from_mounjaro_tirzepatide_to_reta_my/ (last visited Sept. 30, 2026).

[49] u/soggy_bananah, REDDIT (r/Retatrutide), "Switch from tirz?" https://www.reddit.com/r/Retatrutide/comments/1ssuf15/switch_from_tirz/ (last visited Sept. 30, 2026).

unsafe, illegal products that are poisoning the well of consumer confidence in retatrutide as a potential therapeutic option if it is one day approved. Because there is no currently approved retatrutide medicine that is commercially available from any lawful source, consumers' first experiences with retatrutide are occurring exclusively through black-market sellers like LiveWell. When these people experience adverse events—as many already report, *see supra* Section III.C—they often do not attribute those harms to LiveWell but instead to all products containing *retatrutide*.[50] Those consumers are unlikely ever to try retatrutide again—including any lawful version that Lilly ultimately brings to market after FDA approval. Even more, the experiences of those consumers are likely to deter other potential users. Each adverse event caused by LiveWell's illegal products thus represents not only a current injury to the consumer, but a permanent loss of future Lilly patients.

63. The reputational contamination caused by LiveWell's unsafe products extends beyond the individual consumers who are directly harmed. Consumers who experience adverse events from black-market retatrutide share those experiences publicly—on Reddit, on social media, and in personal networks—creating negative associations between retatrutide and adverse events. These public accounts will deter other potential consumers from ever using retatrutide products if approved by FDA. By the time Lilly brings its FDA-approved retatrutide product to market, LiveWell and sellers like it will have already conditioned the public to associate retatrutide as an ingredient with danger, illegality, and reduced or total lack of efficacy. Lilly will thus be forced to overcome not only the ordinary challenges of a new product launch, but the additional burden of rehabilitating a product that has been tarnished by LiveWell's unlawful conduct.

---

[50] *See, e.g.*, u/cac520, REDDIT, r/Retatrutide, "Realized it's time to stop Reta," https://www.reddit.com/r/Retatrutide/comments/1pspn4r/realized_its_time_to_stop_reta/ (last visited Sept. 30, 2026) (explaining decision to "stop Reta" based on reactions to and side effects from "Reta").

64. LiveWell's conduct also causes irreparable harm to Lilly's reputation and goodwill. LiveWell trades on the reputation and clinical data associated with Lilly's products and retatrutide. Upon information and belief, if consumers experience adverse effects from LiveWell's illegal products, they are likely to attribute those harms to retatrutide or to Lilly, damaging Lilly's brand and the public's confidence in Lilly's products and pipeline.

65. Finally, LiveWell's conduct harms innovation and the competitive marketplace by allowing LiveWell to sell products as if they were pharmaceutical-grade medicines for human use with FDA approval, when they are not. LiveWell avoids the rigorous testing, regulatory compliance, and quality controls that Lilly and other pharmaceutical companies must satisfy, and instead free rides on Lilly's investment in developing legitimate, safe medicines by selling illegal retatrutide through intentionally deceptive schemes.

66. The harms caused by LiveWell's conduct are ongoing and will continue unless LiveWell is enjoined from marketing and selling its illegal products purportedly containing retatrutide.

67. Lilly has no adequate remedy at law. The damage to Lilly's reputation, goodwill, and competitive position cannot be fully compensated through monetary damages alone.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair Competition**
**in Violation of the Alaska Unfair Trade Practices and Consumer Protection Act**
**Alaska Stat. §§ 45.50.471 *et seq*.**

68. Lilly incorporates by reference the allegations above as if fully set forth herein.

69. The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 *et seq.*, prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

70. Alaska Stat. § 17.20.110(a)(1)–(2) prohibits the sale, delivery, or offering for sale of any "new drug" unless an application has been approved for such drug under federal law. Under Alaska law, a "new drug" means a drug that is not generally recognized among qualified experts as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, or which has not, other than in such investigations, been used to a material extent or for a material time under such conditions.

71. LiveWell's purported retatrutide products are "new drugs" within the meaning of Alaska law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

72. LiveWell has violated Alaska Stat. § 17.20.110(a)(1)–(2) by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Alaska and throughout the United States.

73. LiveWell's sale of unapproved new drugs in violation of Alaska Stat. § 17.20.110(a)(1)–(2) constitutes an unfair or deceptive act or practice and an unfair method of competition in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 *et seq.*

74. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

75. Lilly has standing to bring this action and is entitled to all available remedies under Alaska Stat. § 45.50.531, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**
**Unfair Trade Practices**
**in Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-105(z)**

76. Lilly incorporates by reference the allegations above as if fully set forth herein.

77. The Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, prohibits deceptive trade practices, including under subsection (z), any other act or practice which is unfair or deceptive to the consumer.

78. Colo. Rev. Stat. § 12-280-131(1) prohibits the sale or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

79. LiveWell's purported retatrutide products are "new drugs" within the meaning of Colorado law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

80. LiveWell has violated Colo. Rev. Stat. § 12-280-131(1) by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Colorado and throughout the United States.

81. LiveWell's sale of unapproved new drugs in violation of Colo. Rev. Stat. § 12-280-131(1) constitutes a deceptive trade practice in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(z).

82. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

83. Lilly has standing to bring this action and is entitled to all available remedies under Colo. Rev. Stat. § 6-1-113, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Unfair Trade Practices**
**in Violation of the Connecticut Unfair Trade Practices Act**
**Conn. Gen. Stat. § 42-110b(a)**

84. Lilly incorporates by reference the allegations above as if fully set forth herein.

85. The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

86. Conn. Gen. Stat. § 21a-110(a)–(b) prohibit the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

87. LiveWell's purported retatrutide products are "new drugs" within the meaning of Connecticut law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

88. LiveWell has violated Conn. Gen. Stat. § 21a-110(a)–(b) by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Connecticut and throughout the United States.

89. LiveWell's sale of unapproved new drugs in violation of Conn. Gen. Stat. § 21a-110(a)–(b) constitutes an unfair or deceptive act or practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a).

90. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

91. Lilly has standing to bring this action and is entitled to all available remedies under Conn. Gen. Stat. § 42-110g, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Unfair Competition**
**in Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1 *et seq.***

92. Lilly incorporates by reference the allegations above as if fully set forth herein.

93. The North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

94. N.C. Gen. Stat. § 106-135 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

95. LiveWell's purported retatrutide products are "new drugs" within the meaning of North Carolina law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

96. LiveWell has violated N.C. Gen. Stat. § 106-135 by distributing, selling, and offering for sale unapproved retatrutide products to consumers in North Carolina and throughout the United States.

97. LiveWell's sale of unapproved new drugs in violation of N.C. Gen. Stat. § 106-135 constitutes an unfair or deceptive act or practice in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

98. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

99. Lilly has standing to bring this action and is entitled to all available remedies under N.C. Gen. Stat. § 75-16, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**<u>FIFTH CAUSE OF ACTION</u>**
**Unfair Competition**
**in Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code §§ 39-5-20 *et seq*.**

100. Lilly incorporates by reference the allegations above as if fully set forth herein.

101. The South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-20, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

102. S.C. Code § 39-23-70 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

103. LiveWell's purported retatrutide products are "new drugs" within the meaning of South Carolina law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

104. LiveWell has violated S.C. Code § 39-23-70 by distributing, selling, and offering for sale unapproved retatrutide products to consumers in South Carolina and throughout the United States.

105. LiveWell's sale of unapproved new drugs in violation of S.C. Code § 39-23-70 constitutes an unfair or deceptive act or practice in violation of the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-20 *et seq.*

106. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

107. Lilly has standing to bring this action and is entitled to all available remedies under S.C. Code § 39-5-140, including injunctive relief, actual damages, treble damages, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
**Unfair Competition**
**in Violation of the Tennessee Consumer Protection Act**
**Tenn. Code §§ 47-18-104 *et seq.***

108. Lilly incorporates by reference the allegations above as if fully set forth herein.

109. The Tennessee Consumer Protection Act, Tenn. Code § 47-18-104, prohibits unfair or deceptive acts or practices affecting the conduct of any trade or commerce.

110. Tenn. Code § 53-1-110 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

111. LiveWell's purported retatrutide products are "new drugs" within the meaning of Tennessee law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

112. LiveWell has violated Tenn. Code § 53-1-110 by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Tennessee and throughout the United States.

113. LiveWell's sale of unapproved new drugs in violation of Tenn. Code § 53-1-110 constitutes an unfair or deceptive act or practice in violation of the Tennessee Consumer Protection Act, Tenn. Code § 47-18-104.

114. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

115. Lilly has standing to bring this action and is entitled to all available remedies under Tenn. Code § 47-18-109, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**<u>SEVENTH CAUSE OF ACTION</u>**
**Unfair Competition**
**in Violation of Texas Common Law**

116. Lilly incorporates by reference the allegations above as if fully set forth herein.

117. Under Texas common law, unfair competition encompasses any dishonest or fraudulent rivalry in trade and commerce, including the sale of products in violation of applicable law to gain an unfair competitive advantage.

118. Tex. Health & Safety Code § 431.114(a) prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

119. LiveWell's purported retatrutide products are "new drugs" within the meaning of Texas law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

120. LiveWell has violated Tex. Health & Safety Code § 431.114(a) by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Texas and throughout the United States.

121. LiveWell's sale of unapproved new drugs in violation of Tex. Health & Safety Code § 431.114(a) constitutes common law unfair competition under Texas law.

122. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

123. LiveWell's conduct was willful and malicious, entitling Lilly to exemplary damages under Texas law.

124. Lilly has standing to bring this action and is entitled to all available remedies, including injunctive relief, damages, and a declaratory judgment under Tex. Civ. Prac. & Rem. Code § 37.009, as well as reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**Unfair Competition**
**in Violation of the Washington Consumer Protection Act**
**R.C.W. §§ 19.86.010 *et seq*.**

125. Lilly incorporates by reference the allegations above as if fully set forth herein.

126. The Washington Consumer Protection Act, R.C.W. § 19.86.020, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

127. R.C.W. § 69.04.570 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

128. LiveWell's purported retatrutide products are "new drugs" within the meaning of Washington law. Retatrutide has not been approved by FDA, is not yet generally recognized as safe and effective, and has not been used to a material extent or for a material time.

129. LiveWell has violated R.C.W. § 69.04.570 by distributing, selling, and offering for sale unapproved retatrutide products to consumers in Washington and throughout the United States.

130. LiveWell's sale of unapproved new drugs in violation of R.C.W. § 69.04.570 constitutes an unfair or deceptive act or practice in violation of the Washington Consumer Protection Act, R.C.W. § 19.86.020.

131. Lilly has been injured by LiveWell's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

132. Lilly has standing to bring this action and is entitled to all available remedies under R.C.W. § 19.86.090, including injunctive relief, damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lilly prays that this Court enter judgment in Lilly's favor on Lilly's claims and award Lilly relief including:

1. An Order declaring that LiveWell:

   i. Engaged in unfair competition in violation of the Alaska Unfair Trade Practices and Consumer Protection Act by its unlawful distribution and sale of unapproved new drugs in violation of the Alaska Food, Drug, and Cosmetic Act;

   ii. Engaged in unfair trade practices in violation of the Colorado Consumer Protection Act by unlawful distribution and sale of unapproved new drugs in violation of Colo. Rev. Stat. § 12-280-131(1);

   iii. Engaged in unfair trade practices in violation of the Connecticut Unfair Trade Practices Act by unlawful distribution and sale of unapproved new drugs in violation of Conn. Gen. Stat. § 21a-110(a)-(b);

   iv. Engaged in unfair trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by its unlawful distribution and sale of unapproved new drugs in violation of the North Carolina Food, Drug, and Cosmetic Act, N.C. Gen. Stat. § 106-135;

   v. Engaged in unfair trade practices in violation of the South Carolina Unfair Trade Practices Act by its unlawful distribution and sale of unapproved new drugs in violation of S.C. Code § 39-23-70;

   vi. Engaged in unfair trade practices in violation of the Tennessee Consumer Protection Act by its unlawful distribution and sale of unapproved new drugs in violation of Tenn. Code § 53-1-110;

   vii. Engaged in unfair trade practices in violation of the Washington Consumer Protection Act by unlawful distribution and sale of unapproved new drugs in violation of R.C.W. § 69.04.570; and

   viii. Engaged in unfair competition under Texas common law by unlawful distribution and sale of unapproved new drugs in violation of Tex. Health & Safety Code § 431.114(a).

2. A permanent injunction enjoining LiveWell and its officers, agents, servants, employees, and all persons acting in concert with them from marketing, advertising, distributing, dispensing, or selling any product containing or purporting to contain retatrutide.

3. An Order directing LiveWell to file with this Court and serve on Lilly's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the Court's injunction.

4. An Order requiring LiveWell to account for and pay to Lilly any and all monetary damages, including disgorgement of profits, arising from the foregoing unlawful acts.

5. An Order for pre-judgment and post-judgment interest on all damages.

6. An Order requiring LiveWell to pay Lilly's costs and attorneys' fees in this action pursuant to the Alaska Unfair Trade Practices and Consumer Protection Act, the Colorado Consumer Protection Act, the Connecticut Unfair Trade Practices Act, the North Carolina Unfair and Deceptive Trade Practices Act, the South Carolina Unfair Trade Practices Act, the Tennessee Consumer Protection Act, Tex. Civ. Prac. & Rem. Code § 37.009, the Washington Consumer Protection Act, and any other applicable provision of law.

7. Other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff Eli Lilly and Company hereby demands a trial by jury on all issues so triable.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Eugene Temchenko*

Eugene Temchenko
Texas Bar No. 24118928
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 432-5072
Facsimile: (214) 972-1771
eugene.temchenko@kirkland.com

Diana M. Watral (*pro hac vice forthcoming*)
James R.P. Hileman (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
diana.watral@kirkland.com
jhileman@kirkland.com

David I. Horowitz (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: (213) 680-8374
Facsimile: (310) 552-5900
dhorowitz@kirkland.com

Chase Chesser (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
150 3rd Avenue South, Suite 1220
Nashville, TN 37201
Telephone: (629) 222-0131
Facsimile: (629) 222-0101
chase.chesser@kirkland.com

*Counsel for Plaintiff Eli Lilly and Company*